**UNITED STATES of America,**
**Appellee,**

v.

**Edward Thomas DAVIS, Appellant.**

**No. 8807.**

United States Court of Appeals
Fourth Circuit.

Argued March 28, 1963.

Decided July 8, 1963.

John Ritchie, Jr., Richmond, Va. (court-assigned counsel), for appellant.

Alton T. Cummings, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and BRYAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Convicted of the interstate transportation of a falsely made money order,[1] the defendant has appealed, questioning the sufficiency of the Court's instructions to the jury as to his requisite knowledge, at and before the transportation, that the instrument was fraudulent and false. Neither he nor his counsel found fault with the charge at the time of the trial, but he asks that we exercise our authority under Rule 52(b) of the Federal Rules of Criminal Procedure to note plain errors affecting his substantial rights. We find, however, no basis for an exercise of that authority.

In Baltimore, Maryland, one hundred money orders of Nation-Wide Check Corporation had been stolen. They were complete, except for the insertion of the name of the payee and the addition of the payee's endorsement. One of these stolen money orders was cashed in a department store in Tarboro, North Carolina. At that time, the name of John M. McKewen, Jr. appeared as the name of the payee. An official of the store testified that the defendant sought to negotiate the money order, identifying himself as McKewen, and presented a Maryland driver's license in the name of McKewen in support of his identification. The store official then approved acceptance of the money order and the defendant exchanged it for cash with the cashier of the store. The store deposited the money order in a bank in Tarboro, North Carolina, and that bank then forwarded it to a bank in Baltimore, Maryland, for collection. In Baltimore, a stop payment notice was affixed to the money order, and it was then returned to the bank in Tarboro.

1. Title 18 U.S.C.A. § 2314.

At the trial, the defendant contended that he had nothing to do with the transaction. He contended that one Jones, not he, was the one who had negotiated the money order. Indeed, he offered Jones as a witness, and Jones testified in behalf of the defendant that he, Jones, had stolen the money orders, had negotiated some of them in Tarboro, North Carolina, and that he had acted alone and without any assistance or cooperation from the defendant. Jones had earlier been arrested and convicted of the interstate transportation of others of the one hundred stolen money orders.

The store official, who authorized the cashing of the money order, testified positively, however, that it was the defendant, not Jones, who negotiated this money order. He testified that later, on the same day, Jones sought to negotiate a similar money order, but that he declined to authorize the cashing of that one.

Under the circumstances, the only real issue at the trial was whether Jones or the defendant was the one who negotiated the money order. The charge of the Court clearly pointed up that issue, and the jury, by its verdict, has resolved it. The defendant has no quarrel with the resolution of the identity issue.

Instead, he contends that the charge of the Court did not sufficiently explain to the jury the necessity that when the defendant negotiated the money order, knowing that its interstate transportation from Tarboro, North Carolina to Baltimore, Maryland would follow as a matter of course, he knew that the money order was falsely made.

Unlike the situation in Barry v. United States, 109 U.S.App.D.C. 301, 287 F.2d 340, the evidence of knowledge that the instrument was falsely made is not weak. The defendant misrepresented himself as being McKewen, the apparent payee, and he had supplied himself with a driver's license in McKewen's name to support his misrepresentation. The evidence abundantly justified the inference that he knew that the instrument was falsely made in its endorsement if not in other respects, and that inference is not dependent upon the piecing together of isolated bits of information as was the situation in Barry.

Moreover in this case, the Court on three or four separate occasions informed the jury that the interstate transportation was unlawful only if, at or before the time of transportation, the defendant knew that the instrument was falsely made. The Court read the statute to the jury. Outlining the contentions of the parties, the Court consistently included the requisite knowledge as one of the elements of the offense. The most that can be said for the defendant's point of view is that the Court did not elaborate upon that element of the offense, as, surely, it would have done if it had been requested to do so. Instead, it sought to point up to the jury the only real factual issue tendered at the trial, the identity of the culprit. Since the defendant at the trial sought to establish an entire absence of any connection between him and the instrument, casting the complete responsibility upon Jones, he tendered no real issue as to his intention in the performance of the act which he disclaimed.

Whatever the defendant's defensive position, it was still requisite for the Government to prove every element of the offense. That it did, and the Court's charge did not omit any element of the offense. Under these circumstances, its emphasis upon the real, principal factual issue made by the testimony does not require that we note as plain error its failure to give equal emphasis to the element of knowledge, when, at the time of the trial, no request was made for amplification of the charge in that respect.

Affirmed.