David **DUKES**, Appellant

v.

**UNITED STATES of America,**
Appellee.

No. 15277.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 22, 1960.

Decided April 7, 1960.

Petition for Rehearing En Banc Denied
May 24, 1960.

Mr. Warren Woods, Washington, D. C.
(appointed by this court) for appellant.

Mr. John D. Lane, Asst. U. S. Atty.,
with whom Messrs. Oliver Gasch, U. S.
Atty., and Carl W. Belcher, Asst. U. S.
Atty., were on the brief, for appellee.

Before FAHY, DANAHER and BURGER,
Circuit Judges.

BURGER, Circuit Judge.

Appeal at government expense was allowed to review appellant's conviction for robbery and rape for which concurrent sentences were imposed.

The only point which calls for discussion is whether the charge was erroneous because the trial court failed to withdraw from the jury the issue of whether appellant had a mental disease. This would have required the court to direct a special or limited verdict to the effect that the appellant was suffering from a mental disease, accompanied by an instruction that the jury, as to the "insanity" defense, was to confine itself to deciding whether the mental disease had a causal connection with the act, *i. e.*, whether the act was the product of the disease.

The evidence as to the "insanity" defense was that a psychiatric examination 21 days after the offense produced a diagnosis of "unsound mind," "mentally sick" and a history of hallucinations, and maladjustment from childhood. The examining psychiatrist, who testified for the defense, said he could not give any opinion as to whether the mental illness existed any time before his examination and could not express any opinion as to when it began. He did not rule out the possibility of "prison psychosis" which "usually occurs in people confined, as a result of the confinement." He testified that "it is a very good possibility that this [case] was one of this kind." Thus it might well have appeared that the psychosis began after the appellant's arrest and resulted from and was "precipitated by the confinement," as the doctor put it. As to the causal connection between the illness and the crime, he said he had no opinion "because I do not know his mental condition at the time of his offense." Such was the medical testimony

of the psychiatric clinical director at the D. C. General Hospital who had examined the appellant on some ten occasions between November 25, 1954 and February 15, 1955.

A St. Elizabeths staff doctor testifying for the government had frequently examined appellant from May 1955 to February 27, 1959, the date upon which he was found competent to stand trial. This doctor said appellant was suffering from a "sociopathic personality." He defined a "sociopath" as a person who is mentally ill but "not as sick as psychotics." He gave his opinion that the crimes were not the product of the "sociopathic personality" condition.

With one psychiatrist taking the position that he could not know the mental condition of the appellant at the time of the offenses and another testifying that the crimes were not the product of the appellant's mental condition, on their evidence and that offered through other witnesses, the case was allowed to go to the jury under instructions in accord with our prior decisions and adapted to the issues presented.

■ Appellant's court appointed counsel argues that the government failed to sustain its admitted burden of proving beyond a reasonable doubt that appellant was not suffering a mental disease on November 4, when the acts were committed. It is not claimed that the government failed to show absence of causal connection. There is no evidence on the issue of causal connection on behalf of the appellant. Thus the record is clear that a jury could reasonably find beyond reasonable doubt that no causal connection existed between his mental condition, whatever it was on November 4, and the acts he committed on November 4.

The central contention urged on appeal can fairly be characterized as an argument that a directed verdict should have been given in such terms that the issue of whether appellant had a mental disease on November 4 was removed from consideration, and the jury restricted to deciding whether that mental disease had caused the commission of the criminal acts.

No authority is cited for thus bifurcating the "insanity" issue for purposes of a partial, limited, or special verdict by direction. No analogous situations have been suggested or are found. The direction of *part* of a verdict in a criminal case would appear to be a radical departure from long established procedures.

■ However, we note that appellant failed to request the instruction for a "special" or "limited verdict" by direction of the court, for which he now contends, nor did he object to the charge on this ground before the jury retired. We hold that whatever its merits, if any, the point cannot now be raised on appeal.[1]

Affirmed.

FAHY, Circuit Judge (dissenting).

A proper disposition by the court of the issue whether the accused suffered from a mental disease at the time of the alleged offense is fundamental where that issue, as here, is presented by the evidence. Accordingly, although at the trial the defense did not aptly seek a ruling by the court on this issue, separately from the issue of the relationship of such a disease, if it existed, to the actual commission of the offense,[1] I think we should reach and consider the problem as presented by the evidence. We have ample

1. Rule 30, Fed.R.Crim.P., 18 U.S.C.A., provides in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto *before the jury retires* to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." (Emphasis added.) Moore v. United States, 1958,

104 U.S.App.D.C. 327, 262 F.2d 216, certiorari denied 1959, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767; Bradley v. United States, 1957, 102 U.S.App.D.C. 17, 249 F.2d 922.

1. The matter was brought to the attention of the trial court on the motion for acquittal notwithstanding the verdict or, in the alternative, for a new trial.

authority to do so under Rule 52(b) of the Federal Rules of Criminal Procedure, which reads:

"(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

See Pinkard v. United States, 99 U.S. App.D.C. 394, 240 F.2d 632; Payton v. United States, 96 U.S.App.D.C. 1, 222 F.2d 794.