

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2005

# USA v. Cummings

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3899

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Cummings" (2005). *2005 Decisions.* Paper 383.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/383

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3899

———————

UNITED STATES OF AMERICA

v.

GREGORY CUMMINGS,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

(Dist. Court No. 02-cr-00934)
District Court Judge: Honorable William G. Bassler

_____

Before: ALITO, AMBRO and LOURIE,<sup>*</sup> <u>Circuit Judges.</u>

Submitted pursuant to LAR 34.1(a)
September 26, 2005

(Filed: October 19, 2005)

_____

<sup>*</sup> Honorable Alan D. Lourie, Judge of the United States Court of Appeals for the
Federal Circuit, sitting by designation.

OPINION OF THE COURT

PER CURIAM:

Gregory Cummings appeals his conviction and sentence for conspiracy to import a controlled substance into the United States.  We affirm.

**I.**

Gregory Cummings and Leeford Reynolds recruited Thomas Staunton and Mark Livingstone to smuggle cocaine into the United States.  Cummings had regularly sold Staunton and Livingstone crack cocaine.  Staunton was apprehended at Newark International Airport while attempting to smuggle cocaine into the country.  Staunton agreed to cooperate with law enforcement officers, who gave him a wire and allowed him to proceed to the airport lobby to meet Cummings and Reynolds as planned.  As Staunton delivered the cocaine he recorded his conversation with Cummings and Reynolds.  Law enforcement officers then  placed Cummings and Reynolds under arrest.  Both made inculpatory post-arrest statements at the scene.

Cummings and Reynolds were indicted for conspiracy to import a controlled substance into the United States.  The District Court declined to hold a pre-trial suppression hearing concerning the post-arrest statements made by the two defendants.  At trial, however, the District Court suppressed Reynolds' statement only.  Shortly

thereafter, Reynolds pleaded guilty to using a lesser charge. The jury found Cummings guilty of conspiracy to import a substance containing cocaine base into the United States in violation of 21 U.S.C. §§ 952(a) and 963. The jury also found that the crime involved more than 50 grams of cocaine base.

Cummings makes five arguments on appeal: first, that conviction required proof that Cummings knew the controlled substance was cocaine base; second, that insufficient evidence was offered to prove that the substance seized contained cocaine base; third, that the District Court erred by allowing testimony that Cummings had sold drugs to two witnesses; fourth, that the District Court erred by not holding a pre-trial suppression hearing and by later informing the jury that Reynolds had pleaded guilty to a crime; and fifth, that Cummings' ten-year sentence was unreasonable. Cummings requests a judgment of acquittal, a new trial, or resentencing.

## II.

Cummings first argues that his conviction is invalid because the government did not prove that he knew the controlled substance being imported was cocaine base. His contention fails because such knowledge is not an element of conspiracy to import a controlled substance.

Determining the mens rea element of an offense is a pure question of law over which we exercise plenary review. *See United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001). Conviction for conspiracy requires proof that the defendant has "knowledge

3

of the illegal objective contemplated by the conspiracy." *United States v. Mastrangelo*, 172 F.3d 288, 291 (3d Cir. 1999). The illegal objective of the conspiracy in this case was to import a controlled substance in violation of 21 U.S.C. §§ 952(a) & 963. Section 952(a) makes it unlawful to import "any controlled substance in schedule I or II of subchapter I of this chapter"; section 963 makes "[a]ny person who attempts or conspires to commit any offense defined in this subchapter" subject to "the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Neither section makes knowledge of the specific identity of the controlled substance an element of the crime. Thus, Cummings's conspiracy conviction did not require the government to prove that he knew the controlled substance in question was cocaine base.

Our interpretation of sections 952(a) and 963 is confirmed by *United States v. Barbosa*, which held that "a defendant who is in actual possession of a particular controlled substance, while intending to distribute another, may be punished for the drug with which he is found to be in possession." 271 F.3d at 459. Although *Barbosa* interpreted section 841(a)(1), its reasoning emphasized the general requirements of the federal drug statutes and is fully applicable to our case:

> The drug statutes require specific knowledge or intent as to a general category of unlawful items. The specific unlawful items, however, are found in the penalty section of the scheme. Thus, the structure and plain text of § 841 affords no support for a requirement that the Government must prove more than the defendant's knowledge that he was trafficking in a controlled substance. ... Moreover, we see no reason, consistent with

4

Congress's overall intent in promulgating the drug laws, to extend the mens rea requirement to the precise controlled substance at issue, even in the face of having concluded that it may be an element of the crime. Barbosa's awareness that he was trafficking in what he believed was a controlled substance, albeit a different type for which he was arrested, is all that is required to satisfy the mens rea portion of the substantive offense.

*Id*. at 458. We do not consider Cummings' claim that *Barbosa* was wrongly decided because we are bound to follow the holdings of prior panels. *See* Third Circuit I.O.P. 9.1; *In re Continental Airlines, Inc.*, 134 F.3d 536, 542 (3d Cir. 1998).

Cummings' reliance on *United States v. Thomas*, 114 F.3d 403 (3d Cir. 1997), and *United States v. Idowu*, 157 F.3d 265 (3d Cir. 1998), is misplaced. In both cases a drug conspiracy conviction was reversed because of insufficient evidence that the defendant knew of a plan involving *any* controlled substance; neither case held that the defendant must know the specific identity of the controlled substance. *See Thomas*, 114 F.3d at 405-06 (noting it was "speculative ... that Thomas knew that drugs were involved" and finding "that the evidence presented at trial [was] insufficient to prove beyond a reasonable doubt the essential element that [Thomas] knew that the purpose of the agreement was the specific unlawful purpose charged in the indictment, i.e., *the possession of a controlled substance* with intent to distribute.") (emphasis added); *Idowu*, 157 F.3d at 267 (concluding "that the evidence that Idowu knew that heroin *or some other controlled substance* was involved is lacking here.") (emphasis added).

In sum, statutory text and our prior case law both make clear that Cummings did not need to know the identity of the illegal drug in order to be convicted of conspiracy to

5

import a controlled substance. Thus, the government's failure to prove such knowledge did not warrant a judgment of acquittal.

### III.

Cummings next claims the jury lacked sufficient evidence to find that the substance seized was cocaine base. We disagree.

This Court exercises plenary review over challenges to the sufficiency of the evidence. *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998). The "critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *see also United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001).

In this case the jury's determination that the substance seized was cocaine base was supported by at least three pieces of evidence. First, the government introduced a laboratory report concluding that the seized substance was cocaine base. Second, Brian Hall, the expert chemist who prepared the report, testified that the substance was cocaine base and explained the methods he used to make this determination. Third, Hall's conclusion was reinforced by testimony from Greg Hilton, an experienced DEA agent who testified as an expert in cocaine trafficking and the value of cocaine.

Cummings' claim that Hall provided "ambiguous" and "confusing" testimony finds no support in the record. Hall clearly stated and explained his belief that the

substance seized at the airport contained cocaine base. Cummings confuses the issue by incorrectly suggesting that Hall's finding of cocaine base is at odds with his detection of L-cocaine, which Cummings wrongly asserts is "also known" as cocaine hydrochloride. In fact, as Hall testified, L-cocaine may take either base or salt form; cocaine hydrochloride is a salt form of L-cocaine, but not all L-cocaine is cocaine hydrochloride. Thus, the mere fact that Hall detected the presence of L-cocaine does not imply that the substance seized was cocaine hydrochloride. To the contrary, the tests Hall conducted unambiguously demonstrated that the L-cocaine involved in this conspiracy was cocaine base.

Cummings argues that Hilton should not have been allowed to testify on the identity of the drugs seized because he did not participate in the arrest and had no training in chemistry or pharmacology. As a qualified expert, Hilton did not need to participate in the operation. Nor did he need training in chemistry or pharmacology, as his testimony regarding the type of drug seized was based not on any asserted expertise in such areas but on his knowledge of different cocaine forms, which was gained from his experience as an undercover agent. We need not decide whether Hilton's testimony was sufficient to establish the identity of the controlled substance because the jury's finding was amply supported by persuasive and uncontroverted laboratory evidence.

Finally, no reasonable person would doubt Hall's testimony simply because he could not recite from memory the chemical formula of cocaine base. The persuasiveness

7

of Hall's evidence rests on the reliability of the laboratory tests he conducted and on his competence to perform them; the jury could reasonably have found that Hall's inability to recall the detailed chemical formula at trial had no bearing on these considerations.

In sum, Cummings' arguments against the validity of the evidence as to the identity of the controlled substance seized are all without merit.

## IV.

Cummings next argues that the District Court erred by allowing evidence that Cummings had dealt drugs to two testifying witnesses. His argument is based on several distinct theories: first, that the evidence was inadmissible character evidence under Fed. R. Evid. 404(b); second, that the probative value of such evidence was outweighed by its prejudicial effect; and third, that the testimony was inadmissible under Rule 609. We find Cummings' 404(b) argument plausible, but do not decide the question because any error was harmless.

## A.

This Court reviews a district court's decision to admit evidence for abuse of discretion. *See In re Japanese Electronic Products*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Fed. R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

8

mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ....

Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) (quoting Fed. R. Evid. 404(b) advisory committee's note; *United States v. Williams*, 900 F.2d 823 (5th Cir. 1990)). "[A]cts are intrinsic when they directly prove the charged conspiracy." *Cross*, 308 F.3d at 320. Although other Circuits have held that evidence is intrinsic if it is "inextricably intertwined" with or "completes the story" of the charged offense, the Third Circuit has thus far reserved judgment on this question. *See id.* at 320 n.19.

If the evidence of prior bad acts does not concern acts intrinsic to the charged offense, the district court must determine whether such evidence is admissible under Rule 404(b). "The Supreme Court gives four guidelines on the admissibility of prior bad act evidence: (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted." *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992) (interpreting *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

**B.**

In our view, Cummings' past drug sales fall under the category of evidence that does not directly prove the charged conspiracy but that is nevertheless "inextricably

9

intertwined" with or "completes the story" of the charged offense. The District Court thought such evidence admissible in light of the holdings of other Circuits, but, as noted above, our Court has not yet decided whether such evidence is subject to Rule 404(b). *See Cross*, 308 F.3d at 320 n.19. For the reasons stated below, we need not decide this question here.

Assuming without deciding that the evidence of Cummings' past drug sales should not have been admitted, we find that any such error was harmless due to the overwhelming evidence of Cummings' guilt. As the government accurately notes in its brief:

> Cummings was caught and arrested at the scene of the crime, waiting for Staunton at the airport while Staunton was smuggling drugs into the United States. Upon his arrest, Cummings confessed to law enforcement officers. In addition to the confession and having been caught at the scene of the crime, the Government also introduced an inculpatory tape-recording of Cummings' conversation with Staunton at the airport, and telephone records corroborating the numerous conversations between Cummings and his two couriers. There was no viable defense theory of the case, and the jury convicted Cummings after less than two hours of deliberations.

U.S. Br. at 23-24 n.23 (internal citations omitted).

Finally, while our harmless error analysis is sufficient to dispose of Cummings' Rule 609 claim, we note that Rule 609 does not apply to the evidentiary issue raised here, as the statements regarding Cummings' past drug sales were not offered to impeach his testimony and in any case did not involve "evidence that any witness has been *convicted* of a crime," Fed. R. Evid. 609(a)(2) (emphasis added). We thus reject Cummings'

10

argument that the prejudice engendered by testimony of his prior drug dealing entitles him to new trial.

## V.

Prior to trial the District Court declined to hold a pre-trial suppression hearing to determine the admissibility of the co-defendants' post-arrest statements. After the trial had commenced the District Court ruled that Cummings' statement was voluntary but that Reynolds' confession was inadmissible. Reynolds subsequently pleaded guilty to using a communications facility to facilitate the commission of a drug offense. When trial resumed, the District Court informed the jury that Reynolds had pleaded guilty to "a crime," and instructed them not to consider that fact in determining whether Cummings was guilty. Cummings claims that the District Court committed two errors that denied him the right to a fair trial: not holding a pre-trial suppression hearing and informing the jury of Reynolds' plea. We address each claim in turn.

## A.

We review the District Court's decision not to hold a pre-trial suppression hearing for abuse of discretion. *See In re Japanese Electronic Products*, 723 F.2d at 260. Fed. R. Crim. P. 12(b)(3)(C) requires a motion to suppress evidence to be raised before trial. "Although Rule 12 does not by its terms specify when such a motion entitles a defendant to a pretrial evidentiary hearing, ... a defendant's moving papers must demonstrate a 'colorable claim' for relief. In order to be 'colorable,' a defendant's motion must consist

11

of more than mere bald-faced allegations of misconduct. There must be issues of fact material to the resolution of defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (internal citations omitted); *see also United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir. 1985) ("[A] trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief.").

The District Court's decision not to hold a pre-trial suppression hearing was reasonable because co-defendants Cummings and Reynolds failed to allege facts warranting relief when they submitted their pre-trial motions. Cummings argued that the failure to audio-tape his post-arrest statements was troubling because recording equipment was present at the time and place of his arrest. Neither Cummings nor Reynolds alleged any other facts favoring suppression. On appeal, Cummings does not even dispute the District Court's conclusion that the failure to audio-tape Cummings' confession did not cast doubt upon the voluntariness of his statement. Given the absence of any other factual basis for challenging the validity of Cummings' confession, the court's decision not to hold a pre-trial hearing was not an abuse of discretion.

Moreover, Cummings suffered no harm from the failure to hold a pre-trial hearing. Cummings does not deny that his post-arrest statement was knowing, voluntary and admissible. Although Reynolds' statement was deemed otherwise, Cummings lacks standing to challenge the District Court's failure to hold a pre-trial suppression hearing

12

concerning Reynolds' statement. *Cf. Alderman v. United States*, 394 U.S. 165, 174 (1969) ("No rights of the victim of an illegal search are at stake when the evidence is offered against some other party.").

**B.**

Cummings next argues that the District Court erred in informing the jury that Reynolds pleaded guilty to a crime. The practical result of this error, Cummings claims, was to deny his right to a fair trial. We reject both arguments.

An objection to a jury charge raised for the first time on appeal is reviewed for plain error. *See United States v. Olano*, 507 U.S. 725, 731 (1993); *United States v. Restaino*, 369 F.2d 544, 545 (3d Cir. 1966). A defendant is not entitled to a mistrial because a co-defendant pleads guilty during trial. *See United States v. Panepinto*, 430 F.2d 613, 615 (3d Cir. 1970). "Unless undue emphasis is placed upon the fact that such pleas have been made, informing the jury that such pleas have been entered is not ordinarily erroneous." *Restaino*, 369 F.2d at 545 (internal citation omitted). "Such information or evidence has been held to be proper ... where the pleas are taken during trial." *Id.* "However, cautionary instructions should be given." *Id.* (citing *United States v. Aronson*, 319 F.2d 48, 52 (2d Cir. 1963)).

Applying these principles to the facts of this case, we find no error. The District Court advised the jury as follows:

> You'll notice that Mr. Reynolds is not sitting at the table. This morning Mr. Reynolds has pleaded guilty to a crime. I want to caution you that his guilty

13

plea is not evidence, cannot be evidence in any way against Mr. Cummings, the defendant, who is on trial. And we'll proceed with that caution in mind.

App. 14. This short and solitary explanation of Reynolds' absence did not "unduly emphasize" the fact of his guilty plea. Its disclosure was accompanied by a clear cautionary instruction, which was reemphasized at the close of trial. Moreover, the District Court stated only that Reynolds had pleaded guilty to "a crime"; thus, the jury had no reason to infer the existence of a drug conspiracy, much less Cummings' involvement in such a conspiracy, from the mere fact of Reynolds' plea.

Cummings' contention that "curative instructions are useless" is contrary to this Court's teaching in *Restaino*, which expressly instructed district courts to give cautionary instructions when informing juries that a co-defendant had pleaded guilty. *See* 369 F.2d at 545; *see also Zafiro v. United States*, 506 U.S. 534, 540 (1993) (noting that juries are presumed to follow cautionary instructions). Our directive to provide such instructions presupposes their potential effectiveness as a means of dispelling prejudice, and we find no evidence that the instruction offered here was inadequate. In any case, the overwhelming evidence of Cummings' guilt rendered any error harmless.

In sum, the District Court did not abuse its discretion in refusing to hold a pre-trial suppression hearing; nor did it violate Cummings' right to a fair trial by apprising the jury of Reynolds' plea. Given the absence of error, the District Court did not abuse its discretion in denying Cummings' motion for a new trial.

14

## VI.

Finally, Cummings challenges his sentence on two grounds. First, he argues that his ten-year sentence is unreasonable because it is three times the length of the sentence imposed on Reynolds, who allegedly engaged in virtually identical and arguably worse conduct than Cummings. Second, Cummings contends that the District Court violated the principles of *United States v. Booker*, 125 S. Ct. 738 (2005), by imposing a four-point enhancement based on leadership role in the offense without submitting this issue to the jury. Given that Cummings received the minimum sentence required by statute, the first argument fails and the second argument need not be considered.

The jury found Cummings guilty of conspiring to import more than 50 grams of cocaine base into the United States. 21 U.S.C. § 960(b)(1)(C) provides that a person who knowingly imports "50 grams or more of a mixture or substance described in subparagraph (B) which contains cocaine base ... shall be sentenced to a term of imprisonment of not less than 10 years ...." Cummings was sentenced to 10 years, the minimum sentence required by law.

Cummings' sentence cannot be deemed unreasonable because the District Court did not have discretion to impose a lower sentence. Reynolds' less severe sentence is irrelevant because he was not convicted of the same crime; instead, he pleaded guilty to a separate offense. Given that the "enhancement for leadership role" guideline did not have any effect on Cummings' sentence, this Court need not consider Cummings' *Booker*

15

argument. *See United States v. Raad*, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005) (noting that "any error in the guidelines calculations is harmless" because "the district court correctly imposed the statutory mandatory minimum sentence"; and concluding "there is no merit to Raad's claim that his sentence is unconstitutional in light of *United States v. Booker* ... [because] Raad was sentenced to the mandatory minimum sentence based on the facts to which he pleaded guilty."); *United States v. Painter*, 400 F.3d 1111, 1111 (8th Cir. 2005) ("[B]ecause the sentence is mandated by statute, it is free of error under the Supreme Court's recent decision in *Booker v. United States*").

## VII.

For the above reasons, we affirm.

16